IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 17, 2025 Session

## JAMES SIMMONS v. RACHEL MONTGOMERY DANIELS

Appeal from the Juvenile Court for Lake County
No. 16JCS8514     Jason L. Hudson, Judge

_____

### No. W2025-00182-COA-R3-JV

_____

Appellant/Mother appeals the trial court's denial of her petition for parental relocation and its entry of a modified permanent parenting plan naming Father/Appellee the child's primary residential parent. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and VALERIE L. SMITH, J., joined.

Matthew W. Willis, Dyersburg, Tennessee, for the appellant, Rachel Montgomery Daniels.

Vanedda Prince Webb, Dyersburg, Tennessee, for the appellee, James Simmons.

**MEMORANDUM OPINION[1]**

### I. Background

Appellant Rachel Montgomery Daniels ("Mother") and Appellee James Simmons ("Father") are the parents of Carter (d.o.b. June 2016) (the "Child"). On October 3, 2016,

---

[1] Rule 10 of the Rules of the Court of Appeals provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

the parties entered a parenting plan, under which Mother was named primary residential parent, with 285 days of parenting time. Father received 80 days of parenting time. On July 2, 2018, the Juvenile Court for Lake County ("trial court") entered a modified parenting plan, under which Mother remained the primary residential parent, with 215 days. Under the modified plan, Father's parenting time was increased to 150 days.

Father is employed as an School Resource Officer at Lara Kendall Elementary School in Ridgely; the Child attends this school. At the time of the hearing, Father earned $52,000.00 per year. Mother, a registered nurse, earned approximately $55,500.00 per year. In addition to Carter, Father has four other children, who range in age from 2 to 10. Mother also has another child, who was 4 at the time of the hearing, and Mother was expecting another child in the summer of 2025.

> Tennessee's Parental Relocation Statute provides that,
> [a]fter custody or co-parenting has been established by the entry of a permanent parenting plan or final order, if a parent who is spending intervals of time with a child desires to relocate outside the state or more than fifty (50) miles from the other parent within the state, the relocating parent shall send a notice to the other parent . . . .

Tenn. Code Ann. § 36-1-108(a). In compliance with the statute, on September 18, 2023, Mother mailed a letter to Father notifying him that she planned to move to the "Jackson/Henderson area," which is more than 50 miles from Father's residence in Lake County. In the letter, Mother stated that she was moving for financial reasons, work, and better opportunities.

On October 9, 2023, Father filed an objection to the proposed relocation and a petition to modify the permanent parenting plan. Father alleged that "in recent months he had assumed the role of primary physical caregiver," with the assistance of the Child's paternal grandmother. He further asserted that Mother had reduced her parenting time to alternating weekends and one or two weekdays.

The matter was heard on November 15, 2024, by which time Mother had relocated to Madison County. On January 29, 2025, the trial court entered an order denying Mother's petition for relocation. In addition to finding that relocation was not in the Child's best interest, *see* discussion *infra*, the trial court also held:
> (a) In the event that [Mother] returns to Lake County to reside within thirty (30) days of the hearing, the existing Permanent Parenting Plan Order shall remain in effect.
> (b) In the event that [Mother] continues to reside in Madison County, then it is in the best interest of the minor child for [Father] to serve as his primary residential parent. Counsel for [Father] would then submit a proposed modified Permanent Parenting Plan to the Court reflecting that [Mother] will

- 2 -

be allowed parenting time on alternating weekends, alternating holidays, and for one-half of the [C]hild's summer vacation. The parties' child support obligations would also be modified based on [Father's] gross income of $52,000 per year plus additional income of $347 per month and based on [Mother's] gross income of $4,631.25 per month based on her hourly wage of $37.50 at 57 hours per bi-weekly pay period. Both parties should receive credit for their other children. Both parties are to be responsible for providing the minor child with health insurance.

On January 29, 2025, Father filed a petition asking the trial court to enter his proposed modified permanent parenting plan, which named him primary residential parent, with 285 days of parenting time; Mother received 80 days of parenting time.   In his petition, Father noted that Mother "has stated that she does not intend to [return to Lake County]."  According to a February 10, 2025 "Notice of Hearing," a hearing on Father's petition was set for March 26, 2025.  There is no transcript of this hearing, nor is this hearing referenced in the approved statement of the evidence.  On March 28, 2025, the trial court entered Father's modified parenting plan, which was signed by counsel for both parties.

After filing a timely notice of appeal, Mother submitted a proposed statement of the evidence to the trial court in lieu of a transcript. Tenn. R. App. P. 24(c). Father filed an objection. On April 17, 2025, the trial court entered an order which made specific findings amending the proposed statement of the evidence. Tenn. R. App. P. 24(e). Accordingly, the facts set out herein are taken from the statement of the evidence approved by the trial court.

## II. Issue

Mother raises the following issue for review as stated in her brief:

The trial court erred in determining that it is not in the best interest of the minor child . . . to relocate from Lake County, Tennessee to Madison County, Tennessee with his mother thereby entering a court ordered modified permanent parenting plan order changing the primary residential parent.

## II. Standard of Review

The trial court heard this case sitting without a jury. Accordingly, we review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). However, no presumption of correctness attaches to the trial court's conclusions of law, and our review of those conclusions is *de novo*. **Blair v. Brownson**, 197 S.W.3d 681, 684 (Tenn. 2006) (citing **Bowden v. Ward**, 27 S.W.3d 913, 916 (Tenn. 2000)). Nonetheless, "we are mindful that trial courts are vested

with wide discretion in matters of child custody and that the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." **Johnson v. Johnson**, 165 S.W.3d 640, 645 (Tenn. Ct. App. 2004) (quoting **Koch v. Koch**, 874 S.W.3d 571, 575 (Tenn. Ct. App. 1993)). This deference extends to decisions made under the parental relocation statute.  As this Court has explained, "[i]nasmuch as parental relocation decisions involve 'significant' trial court discretion, these decisions should be reviewed pursuant to an abuse of discretion standard." **Hall v. Hall**, No. M2021-00757-COA-R3-CV, 2022 WL 1642700, at *3 (Tenn. Ct. App. May 24, 2022). "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." **Gonsewski v. Gonsewski**, 350 S.W.3d 99, 105 (Tenn. 2011).

## IV. Analysis
### A. Denial of Mother's Petition for Parental Relocation

Tennessee Code Annotated section 36-6-108 provides, in relevant part:
(c)(1) If a petition in opposition to relocation is filed, the court shall determine whether relocation is in the best interest of the minor child.

(2) In determining whether relocation is in the best interest of the minor child, the court shall consider the following factors:

(A) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life;
(B) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;
(C) The feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties;
(D) The child's preference, if the child is twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;
(E) Whether there is an established pattern of conduct of the relocating parent, either to promote or thwart the relationship of the child and the nonrelocating parent;
(F) Whether the relocation of the child will enhance the general quality of life for both the relocating parent and the child, including, but not limited to, financial or emotional benefit or educational opportunity;
(G) The reasons of each parent for seeking or opposing the relocation; and

(H) Any other factor affecting the best interest of the child, including those enumerated in § 36-6-106(a).

In its order denying Mother's petition for relocation, the trial court applied the correct legal standard in considering the foregoing statutory factors and making the following findings:

(a) Factor (1) weighs against relocation. [Father] and particularly the [C]hild's maternal grandmother have played an active role in the [C]hild's life and education. [Father], both the maternal and paternal grandparents, and the majority of the [C]hild's siblings and other significant persons in the [C]hild's life reside in Lake County.

(b) Factor (2) weighs against relocation. There was no proof the [C]hild has special needs, but the [C]hild has struggled with school. He is established in the Lake County School System. The relocation would impact his education. There was no proof to support the [Mother's] argument that the Madison County School System would better meet the [C]hild's needs than the Lake County School System.

(c) Factor (3) weighs in favor of relocation because the distance between Lake County and Madison County is not so great that the relationship between [Father] and the minor [C]hild could not preserved.

(d) Factor (4) is not a factor as the minor [C]hild is under the age of twelve (12).

(e) Factor (5) weighs against relocation. The proof established that after pleadings were filed in this matter, [Mother] acted to reduce the amount of time the [C]hild was spending with [Father].

(f) Factor (6) weighs in favor of relocation as the proof established that relocation will enhance [Mother's] job prospects.

(g) Factor (7) concerning the reasons for seeking relocation neither supports nor weigh against relocation.

(h) Another factor the Court considered was that [Mother] relocated to Madison County after [Father] filed the instant action.

Based on the foregoing findings, the trial court concluded "that relocation from Lake County to Madison County is against the minor [C]hild's best interests." We have reviewed the statement of the evidence approved by the trial court, and we conclude that the evidence does not preponderate against the trial court's findings, *supra*.

Concerning factor one, *i.e.*, "The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life, the approved statement of evidence provides:

[Father], both the maternal and paternal grandparents, and the majority of the [C]hild's siblings and other significant persons in the [C]hild's life reside in Lake County.

- 5 -

Both parents routinely allowed the paternal grandmother to assist them in providing care for the [C]hild during their parenting time. While the [F]ather was attending the law enforcement training academy, the paternal grandmother would keep the [C]hild during [F]ather's mid-week parenting time. Father did continue to exercise his weekend parenting time while attending the law enforcement training academy. Prior to the filing of the Objection to the Relocation by the [F]ather, the paternal grandmother frequently had responsibility for the minor [C]hild during [M]other's parenting time.

From the foregoing, it is clear that the Child's paternal grandmother has provided extensive care and support for the Child during both of the parties' parenting time. In addition to paternal grandparents, the Child's maternal grandparents and the majority of the Child's siblings live in Lake County. From the record, we agree that this factor weighs against Mother's relocation.

Statutory factor 2 requires the trial court to consider "[t]he age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development . . . ." Here, the trial focused on the Child's educational needs and the fact that "he has struggled with school." The statement of the evidence shows that

The child has struggled with school and needed a great deal of supervision and support to complete homework assignments and keep up with his school work. Both the [F]ather and the paternal grandmother have provided this support for the [C]hild and have been active in his education. As a result, the [C]hild's education was progressing. Further, Father is active in the [C]hild's extracurricular activities to a greater extent than Mother.

Although the record shows that Father and paternal grandmother have been instrumental in ensuring that the Child succeeds at school, at trial, Mother argued that the Child would receive a better education in the Madison County System. The trial court found this argument unpersuasive and approved the following statement of the evidence:

[Mother] asserts that there are better educational opportunities for the minor [C]hild in . . . Madison County compared to Lake County. There was no proof presented to the Court to support [Mother's] argument that the Madison County School System would better meet the [C]hild's needs than the Lake County School System.

Although there is no evidence to suggest that the Child would have "better educational opportunities" in Madison County, the statement of the evidence indicates that the Child

needs "a great deal of supervision and support to complete homework assignments and keep up with his school work." From the evidence, this supervision and support is provided primarily by Father and the paternal grandmother. Furthermore, the Child is established in the Lake County School System and is "progressing" in his education there. This evidence supports the trial court's conclusion that statutory factor 2 weighs against Mother's relocation.

The trial court also held that statutory factor 5, *i.e.* "[w]hether there is an established pattern of conduct of the relocating parent, either to promote or thwart the relationship of the child and the nonrelocating parent," weighed against Mother's relocation. The evidence reflects some retaliatory actions on the part of Mother following Father's objection to her petition for relocation. As set out in the statement of the evidence:

> After the [F]ather filed an objection to the [C]hild's relocation, the [M]other no longer allowed the [F]ather or the paternal grandmother to provide care for the [C]hild during [M]other's parenting time. Instead, she allowed the maternal grandmother and other family members who lived in Lake County to care for the minor child during the school week. Mother, who had relocated to Madison County, was not providing care for the minor [C]hild during the school week.

In its order, *supra,* the trial court specifically found that "[Mother] acted to reduce the amount of time the [C]hild was spending with [Father]." Based on the foregoing statement of the evidence, there is proof to support the trial court's finding that this factor weighs against Mother's relocation.

We acknowledge the trial court's finding that statutory factor 3 weighs in favor of Mother's relocation because the "distance between Lake County and Madison County is not so great that the relationship between [Father] and the minor [C]hild could not preserved." We also acknowledge the trial court's finding, under statutory factor 6, that relocation would "enhance [Mother's] job prospects." Although we agree with the trial court's findings on these two factors, we are not persuaded that either the relatively short distance between Lake County and Madison County, or the fact that Mother's job prospects are better in Madison County, negates the trial court's ultimate holding that the majority of the statutory factors weigh against her relocation.

Having determined that the evidence supports the trial court's findings concerning the Child's best interest, and that the trial court applied the correct legal standard, we conclude that the trial court did not abuse its discretion in denying Mother's petition for relocation.

### B. Entry of the Modified Permanent Parenting Plan

We now turn to the question of whether the trial court erred in entering Father's

modified permanent parenting plan. As noted above, after Mother decided to remain in Madison County, Father filed a petition asking the trial court to enter his proposed parenting plan. Indeed, the Parental Relocation Statute requires a trial court to enter a modified plan when it denies relocation, to-wit:

> [i]f . . . the court finds that relocation is in the best interest of the minor child, the court **shall** modify the permanent parenting plan as needed to account for the distance between the nonrelocating parent and the relocating parent.

Tenn. Code Ann. § 36-6-108(c)(3) (Emphasis added). "[W]hen the word 'shall' is used in statutes it is ordinarily construed as being mandatory and not discretionary." *Gabel v. Lerma*, 812 S.W.2d 580, 582 (Tenn. Ct. App. 1990). Accordingly, once the trial court determined that Mother's relocation was not in the Child's best interest, it was required to modify the permanent parenting plan. At the time Father filed his petition, the trial court had already entered its order denying Mother's petition for relocation. In that order, the trial court specifically informed the parties that,

> [i]n the event that [Mother] continues to reside in Madison County, then it is in the best interest of the minor child for [Father] to serve as his primary residential parent. Counsel for [Father] would then submit a proposed modified Permanent Parenting Plan to the Court reflecting that [Mother] will be allowed parenting time on alternating weekends, alternating holidays, and for one-half of the [C]hild's summer vacation.

From our review, Father's proposed parenting plan accomplishes everything the trial court outlined in its order, *i.e.,* it names Father as the Child's primary residential parent and awards Mother parenting time, including "alternating weekends, alternating holidays, and [] one-half of the [C]hild's summer vacation." However, as set out in her brief, Mother asserts that:

> The trial court's decision [to enter Father's proposed modified parenting plan], in effect, penalized the Mother's continued residence in Madison County by severely curtailing her parenting time, despite her consistent role as the Child's primary caregiver since birth. The court's order does not reflect a careful balancing of statutory best interest factors, nor does it attempt to preserve the Child's established relationship with the Mother under T.C.A. § 36-6-106(a). Such a drastic modification—without specific findings or compelling evidence of detriment—constitutes an abuse of discretion.

It is true that the Parental Relocation Statute requires a trial court to use the factors outlined in Tennessee Code Annotated section 36-6-106(a) when fashioning a parenting plan, to-wit:

> If the court finds that relocation is not in the best interest of the minor child, the court shall deny the petition for approval and, **utilizing the factors provided in § 36-6-106(a)**, enter a modified permanent parenting plan that shall become effective only if the parent proposing to relocate elects to do so

despite the court's decision denying the parent's petition for approval.

Tenn. Code Ann. § 36-6-108(c)(4) (emphasis added); *see also* Tenn. Code Ann. § 36-6-108(c)(3) (*supra*). However, in this case, the statement of the evidence indicates that Mother "stipulated" to the entry of the modified parenting plan, to-wit:

> On March 26, 2025, Respondent Rachel Daniels stipulated to the entry of a modified parenting plan order naming Petitioner James Simmons as the primary residential parent because her residence remained in Madison County.[2]

According to the notice of hearing, the trial court heard Father's petition for entry of his proposed parenting plan on March 26, 2025. From the foregoing statement of the evidence, we can only conclude that, on the day of the hearing, Mother "stipulated" to the entry of Father's proposed parenting plan. Again, there is no transcript of the March 26th hearing, nor does the statement of evidence elaborate on the specifics of that hearing. However, in addition to the statement that Mother "stipulated" to Father's proposed parenting plan, the modified parenting plan entered by the trial court is signed by Mother's attorney, under the notation "Approved for Entry." From this sparse evidence, we can only conclude that Mother agreed/stipulated to the modified permanent parenting plan that was entered by the trial court on March 28, 2025. In view of Mother's stipulation, the trial court was relieved of its obligation to fashion a parenting plan using the Tennessee Code Annotated section 36-6-106(a) factors. With the parties' agreement, the trial court did not err in entering the modified permanent parenting plan. Tenn. Code Ann. § 36-6-405(d) ("If the parties agree to a modification of an existing permanent parenting plan, . . . then the court is not required to inquire further and make an independent determination as to whether the modification is in the best interest of the child."); Tenn. Code Ann. § 36-6-101(a)(2)(A)(i) (relieving the trial court of making "written findings of fact and conclusions of law to support the basis for the order" where "both parents have agreed to a custody arrangement and parenting plan").

## V. Conclusion

For the foregoing reasons, the trial court's order is affirmed, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Rachel Montgomery Daniels. Execution for costs may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE

---

[2] This statement is set out in Father's objection to Mother's statement of the evidence. Father's statement was adopted by the trial court in its September 21, 2025 order.